BURLEY TOBACCO GROWERS' CO-OPERATIVE ASSOCIATION v. INDIANA DISTRICT WAREHOUSING CORPORATION.

[No. 15,000. Filed January 27, 1936. Rehearing denied April 24, 1936.]

*Robert H. Hayes* and *Charles A. Lowe,* for appellant.
*Estal G. Bielby* for appellee.

BRIDWELL, J.—Appellant brought this action against appellee, alleging in its complaint, in substance, that it is the owner and holder of 2,221 shares of the capital stock of appellee, said stock having a par value of $1.00 per share; that its ownership of said stock is evidenced by certificates of stock issued to it by appellee; that by resolution, duly voted and passed by the board of directors of appellee on January 12, 1931, a distribution of thirty per cent of the par value of said capital stock was voted; that said distribution is in the nature of a liquidating dividend, and was payable to stockholders as of February 1, 1931; that, notwithstanding the declaration of said dividend, appellee has failed and refused to pay appellant the dividend due upon such stock; that said dividend amounts to $666.30, which has been due and owing to appellant from appellee since said February 1, 1931; and that no part of the same has been paid. The complaint was answered by general denial, and at the trial of the cause the parties agreed in open court that all defenses might be proven under such answer; the cause was tried to the court and there was a finding in favor of appellant for the sum of $209.70, the amount of dividend due upon 699 shares of such

capital stock, and against appellant as to its claimed right to recover the declared dividend on the rest of the stock involved. In due course appellant filed its motion for a new trial, asserting as causes therefor that there was error in the assessment in the amount of recovery, in this, that the amount allowed by the court in favor of appellant is too small; error in the assessment in the amount of recovery in that the court disallowed the claims of appellant upon "1504" shares of stock owned by it, upon which the amount of said dividend would be "$451.20," and by which amount the finding of the court is too small; that the decision of the court is not sustained by sufficient evidence; that the decision is contrary to law; and error in admitting certain evidence over the objection of appellant. This motion was overruled, with an exception by appellant, and judgment rendered in accordance with the finding. This appeal was, thereafter, perfected, the error assigned being alleged error of the court in overruling the motion for a new trial.

The essential facts as disclosed by the evidence may be summarized as follows: Appellant is a Kentucky, and appellee an Indiana, corporation, both organized pursuant to a plan for the marketing of tobacco co-operatively, agreed to by various tobacco growers in Indiana, Kentucky, and other states; said agreement to be effective during the years 1922 to 1926, inclusive, in the event that growers, who, in 1920, produced 75 per cent of burley tobacco raised in the states of Kentucky, Indiana, Tennessee, and Ohio, executed said contract. The required number of signatures were obtained and the plan became effective. All growers of tobacco joining in the plan executed a uniform contract whereby they became members of appellant association. This plan contemplated, and by the uniform contract it was agreed, that tobacco growing territory would be divided

into districts, and that in these districts corporations would be organized for the express purpose of providing facilities for the receiving, grading, processing, storing, and warehousing of tobacco, to be delivered at such warehouses by members of the appellant association. Warehousing corporations, including appellee, were incorporated, and appellant and appellee, on March 4, 1922, entered into a contract covering their relations and transactions, each with the other, to terminate when the handling of the crop of 1926 was completed. This contract was carried out by the parties, and after its termination, it appearing that controversies arising out of said contract existed, a complete settlement between the corporations was had and consummated in accordance with an award made on April 12, 1928, pursuant to an agreement to submit their differences to arbitration. Growers of tobacco in the district where appellee owned warehouses, who were members of appellant association, delivered their crops to appellant at the warehouses of appellee, receiving at the time of delivery a partial advance payment therefor, and a receipt or "participating certificate" evidencing the amount and grade of tobacco so delivered. Deduction of so much per pound from each pound of tobacco delivered was authorized by the contract between the association and the growers, and was made upon delivery, and, in lieu of the amounts deducted growers were entitled to receive common stock of appellee of the par value of such amounts so deducted. The uniform contract by which all growers were obligated to deliver their tobacco only to appellant, also provided that in the event any subscriber thereto sold tobacco on the market, such subscriber would pay to appellant the sum of 5 cents per pound for each pound so sold, as liquidated damages for his breach of contract. All books and records evidencing transactions between the growers, appellant, and ap-

pellee (including the "stock book" of appellee) were kept at the main office of appellant in Lexington, Kentucky, until the period covered by the agreement for the co-operative marketing of the tobacco had expired, when such records were sent to appellee and thereafter kept by it at its office in Madison, Indiana. Certificates of stock in the appellee corporation were written out purporting to show the ownership by various growers, who had delivered their tobacco to the warehouses of appellee, of the number of shares specified in the several certificates so made out to individual growers. No delivery of certificates of stock was made to growers until after the expiration of the time during which the original agreement for the marketing of the tobacco was operative, the certificates remaining in the stock book for future delivery. Part of these certificates of stock, amounting in the aggregate to approximately 1,522 shares, were never delivered to the persons in whose names they appeared of record in the stock book of appellee corporation, but were held by appellant, and eventually, upon its request, and without any assignment or transfer thereof by the parties named in said several certificates, they were canceled and reissued to appellant; and these shares are the shares involved in this controversy, and upon which the court below refused to allow the thirty per cent liquidating dividend declared by appellee to its stockholders. Six hundred ninety-nine shares of stock, evidenced by certificate number 7654, and on which the dividend was allowed by the court, were purchased by appellant for cash.

There is also evidence to prove that after the co-operative marketing agreement contracts had expired, a question was raised by officers of appellee corporation as to whether the certificates of stock in controversy should be canceled and reissued to appellant as requested by it; and that the matter was submitted to an attorney of

appellee corporation, who advised that same should be done; and said action was accordingly taken, it appearing by evidence disclosed by the record that appellant asserted that it had the right to have the stock issued to it because of the claimed fact that the growers in whose name such stock originally stood had violated their contracts with the appellant association, and that the liquidated damages provided for by the uniform contract equaled or exceeded the par value of the stock; and that, in other instances, indebtedness owing to appellant under the terms of its said contract with growers was due and unpaid, and because of this it was entitled to have said stock issued to it. There is also evidence given by witnesses who were members of the association, and who had "dumped" their tobacco (sold their tobacco on the market), that appellant had retained from the amounts due them for tobacco sold through appellant, the liquidated damages provided for by the contract, and evidence that, notwithstanding this fact, the certificate of stock standing in the name of each of such witnesses in the stock book of appellee had been canceled and reissued to appellant. The certificates of stock of appellee corporation contain a provision that said stock is "transferable only on the books of the corporation in person or by attorney upon surrender of this certificate properly endorsed."

There is no provision of the uniform contract executed by growers which authorizes the appellant to have stock in appellee corporation to which they (the growers) were entitled, issued, or reissued to appellant *under any conditions whatsoever*. Excepting the certificates of stock reissued to appellant, there is no evidence to prove, or which tends to prove that appellant actually owned that proportion of the common capital stock of appellee (other than 699 shares thereof), upon which, through the medium of this action, it

seeks to compel the payment of what is denominated as a "liquidating dividend" to stockholders. To the contrary it does appear that in the first instance the certificates of stock which were canceled and reissued to appellant, were first made out in the names of the various growers of tobacco whom the records of appellee corporation disclosed were owners of the proportionate part of the common capital stock of appellee represented by such original certificates. So far as the record discloses there has been no assignment by any grower of any of the canceled certificates originally made out to him, nor of any of his rights to such stock; nor does it appear that any authority existed in appellee corporation which justified the action taken in connection with the certificates here involved. Appellant, however, asserts that the certificates of stock were issued to it by appellee with knowledge of all the facts relative to any rights of interested persons, and that appellee cannot, now, be allowed to dispute appellant's ownership of the stock, nor its right to receive the dividend declared. From the briefs of the parties, and from some of the evidence, it appears that appellant asserted ownership to the stock in question because of claimed indebtedness due it from growers, and because of certain cross-demands existing between it and the growers of tobacco in whose names the stock appeared upon the records of appellee; and that appellee, because of the asserted right by appellant, took the action it did in connection with said certificates of stock. Appellant and appellee could not determine this matter between themselves, and, by the action taken, deprive growers of their rights to participate in the liquidating dividend declared by appellee upon its common capital stock; nor does it follow that if appellee afterwards believed that its action in issuing stock to appellant was without authority, that it was, nevertheless, precluded from denying the right of

appellant to receive the proportionate amount of the dividend declared to stockholders. When we view the evidence in its entirety, and consider what legal rights exist in the light of facts proven, we are not persuaded that any principle of estoppel should be applied in the instant case.

During the course of the trial, and on cross-examination of witnesses, inquiry was made as to how appellant secured certain of the stock certificates held by it, and concerning the cancellation, transfer, and reissuing of certificates of stock involved. Objections were made to the questions which sought to elicit this information, and overruled. We are of the opinion that no error was committed in this respect. This evidence was competent as bearing on the controverted question of whether or not appellant was, in fact, the owner of the proportionate share of the common capital stock of appellee represented by the certificates held by it.

Finding no reversible error, the judgment is affirmed.